**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NATIONWIDE AMBULANCE SERVICES, INC.,<br><br>Debtor. | Case No. 13-10559 (RG)<br><br>Chapter 7 |
| NANCY ISAACSON, CHAPTER 7 TRUSTEE,<br><br>Plaintiff,<br><br>v.<br><br>ALEXANDER IVCHENKO,<br><br>Defendant. | Adv. Pro. No. 16-1897 |

**OPINION**

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**[1]

On May 29, 2019, the Court held a trial to consider a two-count complaint (the "Complaint") filed by Chapter 7 Trustee, Nancy Isaacson ("Plaintiff"). The Complaint seeks to: (1) recover an alleged shareholder loan balance of $206,920 owed by Alexander Ivchenko ("Defendant") under section 542(b) of the Bankruptcy Code; and (2) avoid and recover alleged fraudulent transfers made by the Debtor, Nationwide Ambulance Services, Inc. ("Nationwide"), to or on behalf of Defendant, totaling $165,761.89. Defendant argues that he repaid the loan, and that the transfers were reimbursements on account of expenses he paid on Nationwide's behalf.

After the trial, the Court asked the parties to brief whether Plaintiff could avoid post-petition transfers under section 544(b). Letter Correspondence, July 12, 2019 (Dkt. No. 29). Only Plaintiff filed a post-trial brief. Plaintiff concedes that section 544(b) does not apply to post-

---

[1] By notice docketed on March 21, 2019, I am temporarily handling all matters in this adversary proceeding. See Dkt. No. 22.

petition transfers, but requests that she be allowed to conform the pleadings to the evidence or amend the Complaint to add a new claim. See Post-Trial Brief, at 13 n.3 (Dkt. No. 30).

The Court cannot conform the Complaint to the evidence because Defendant would be prejudiced by the inclusion of issues related to post-petition transfers, and the "relation back" rule is not a procedural device to restore a claim that was timed barred <u>before</u> a complaint was filed. However, Plaintiff did satisfy her burden of showing that Defendant owes the shareholder loan to the estate. Therefore, upon consideration of the witnesses' testimony, documentary evidence, and the parties' arguments, judgment shall be entered in favor of Plaintiff on Count I and in favor of Defendant on Count II.

## FINDINGS OF FACT

Nationwide provided ambulatory transportation services to Medicaid and Medicare patients, including physician mandated and prescribed transportation services to treatment centers for dialysis. Ex. D-C, Defendant Letter Correspondence. Defendant was the sole shareholder of Nationwide. Before Nationwide filed for bankruptcy, the Department of Health and Human Services ("HHS") challenged certain invoices submitted by Nationwide and denied certain claims as unnecessary. Id. Nationwide appealed. Id. The appeals process, however, multiplied by HHS's refusal to pay claims, led to Nationwide's demise. Id.

On January 11, 2013, Nationwide filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date"). The bankruptcy court (Gambardella, J.) entered a First Interim Cash Collateral Order, which by its own terms became a final order on May 21, 2013 (the "Cash Collateral Order"). Ex. P-5. The budget attached to the Cash Collateral Order (the "Budget") provided for, among other things, Nationwide to pay salaries/wages in the amount of $65,050 per month. Id. Nationwide did not comply with the Budget. Accordingly, Bank of America ("BOA"), a secured creditor, filed a Motion to Terminate Use of Cash Collateral Order and for Relief from

2

the Automatic Stay. (Main Case Dkt. No. 169). The parties reached a settlement, and on August 27, 2014, the court (Gambardella, J.) entered a Consent Order resolving BOA's motion. Ex. P-6, Consent Order. The Consent Order - a supplement to the Cash Collateral Order - provided in part that Defendant's salary shall not exceed $6,500 per month. Id. ¶ 3.

Nationwide's reorganization efforts failed, and on April 22, 2015, the case converted to Chapter 7. The next day Plaintiff was appointed as Chapter 7 Trustee. Plaintiff retained the accounting services of Bederson LLP to investigate Nationwide's books and records. After Bederson's investigation, Plaintiff sent a demand letter to Defendant, seeking payment of an alleged shareholder loan balance of $206,920 (the "Loan Balance") and repayment of alleged fraudulent transfers made to or on behalf of Defendant in the amount of $169,649.17. Ex. D-B, Demand Letter. Defendant refused to make payment. On December 27, 2016, Plaintiff commenced this adversary proceeding to recover the Loan Balance under section 542(b), and to avoid and recover actual and constructive fraudulent transfers, pursuant to sections 544(b) and 550 of the Bankruptcy Code and New Jersey Uniform Fraudulent Act, N.J.S.A. §§ 25:2-25(a) and 25:2-27(a) (the "NJUFTA"). Plaintiff alleges that the Loan Balance is recoverable because it is a debt owed by Defendant to Nationwide, and therefore, property of the estate.

She also claims that between January 2011 and May 2015, Nationwide made fraudulent transfers to or for the benefit of Defendant. The alleged transfers consist of payments to Defendant's ex-spouse, credit card entities, banks, and other parties, all on account of Defendant's personal expenses. Plaintiff claims she has standing under section 544(b) to pursue the fraudulent transfers because the IRS filed a proof of claim in the case, and section 6901(a)(1)(A) of title 26 allows the IRS, an unsecured creditor, to avoid and recover the alleged transfers under state law.

Defendant answered, alleging that he repaid the Loan Balance, and that the Cash Collateral Order and the Consent Order allowed him to receive a salary. He also claims that a separation

3

agreement entered in 2010 required him to pay alimony and transfer thirty-percent of shares in Nationwide to his ex-spouse, and that the credit cards were divided between personal and business expenses.

### A. Witnesses

Plaintiff and her accountant, Shari Hartstein testified during Plaintiff's case in chief. Hartstein also testified as a rebuttal witness. Hartstein is an accountant and manager at Bederson LLP's Insolvency and Restructuring Department with twenty years of experience in conducting forensic accounting for bankrupt entities. She is a Certified Public Accountant and a Certified Insolvency and Restructuring Advisor. Plaintiff retained Hartstein to review, among other things, Nationwide's pre and post-petition transfers to insiders. Hartstein received and reviewed Nationwide's books and records, including Nationwide's QuickBooks files, bank statements, monthly operating reports, tax returns, check stubs, and cash receipts. The Court is satisfied with Hartstein's credentials and knowledge and experience in forensic accounting of bankrupt entities. Moreover, both witnesses were credible.

Defendant was self-represented. He largely made arguments at trial as opposed to providing testimony. Insofar as Defendant testified, he was not credible. Though he may have personal knowledge about Nationwide's business, as its owner, his arguments and testimony were immaterial to the issues presented, or discredited by the documentary evidence.

### B. Shareholder Loan

Plaintiff testified that Bederson prepared a summary report showing pre and post-petition transfers made to or for the benefit of Defendant. She consulted with Bederson after its investigation, reviewed Nationwide's books and records, and identified a shareholder loan made to Defendant. She also reviewed the budget attached to the Cash Collateral Order and explained the events leading up to the Consent Order. Plaintiff concluded that there was a Loan Balance from

her review of Nationwide's tax returns and business records. Nationwide's 2014 Tax Return showed a shareholder loan balance of $208,920 at the beginning of the year which increased to $258,009 at the end of the year. Ex. P-3. The Tax Return was signed by Defendant. Nationwide's Monthly Operating Reports (the "MORs") also showed an outstanding shareholder loan in the balance sheets from 2013 to 2014 as follows:

| MOR[2] | Shareholder Loan Amount |
|---|---|
| January 2013- February 2013 | $251,500.00 |
| June 2013 | $246,989.00 |
| July 2013 – December 2013 | $208,919.72 |
| September 2014 | $215,420.00 |
| October 2014 | $208,920.00 |
| December 2014 | $206,920.00 |

The MORs were signed by Defendant as Nationwide's owner and filed in the bankruptcy case.

Plaintiff credibly testified that she reviewed Nationwide's books and records, determined that Defendant owed the Loan Balance to Nationwide as a result of Nationwide making transfers to or on behalf of Defendant. Her testimony was supported by the documentary evidence.

Hartstein testified that Nationwide kept a Property Distributions Account (the "Distribution Account") on its QuickBooks file. Ex. P-7(B). The Distribution Account was an equity and retained earnings account used to record personal transactions made to or on behalf of Defendant.

---

[2] Exhibit 8 contains Nationwide's balance sheets for the following MORs: Ex. P-8(A), (Jan. 2013, pg. 16 of 26); Ex. P-8(B), (Feb. 2013, pg. 31 of 34); Ex. P-8(C), (Jun. 2013, pg. 37 of 42); Ex. P-8(D), (Jul. 2013, pg. 105 of 110); Ex. P-8(E), (Aug. 2013, pg. 96 of 100); Ex. P-8(F), (Sept. 2013, pg. 115 of 121); Ex. P-8(G), (Oct. 2013, pg. 120 of 126); Ex. P-8(H), (Nov. 2013, pg. 100 of 104); Ex. P-8(I), (Dec. 2013, pg. 46 of 51); Ex. P-8(J), (Sept. 2014, pg. 86 of 92); Ex. P-8(K), (Oct. 2014, pg. 41 of 45); and Ex. P-4, Dec. 2014 Balance Sheet.

5

It showed a list of transactions from January 2011 to May 2015. On December 31, 2011, a transaction marked, "ADJUST," with an account name of "Accounts Recei[vable]," zeroed out the Distribution Account. Id. at 3. Hartstein credibly explained that such a transaction usually represents a year-end adjustment where a corporation reclassifies a payment in a property distributions account into an asset account for tax or other purposes.

A parallel transaction occurred the following year. The balance was again zeroed out and reclassified as a shareholder loan. Id. at 6. These transactions were year-end adjustments made by Nationwide's accountant reclassifying the balance in the Distribution Account into an asset account defined as a shareholder loan. Id. The Distribution Account was not zeroed out and reclassified in 2013. Hartstein explained that this means a shareholder loan continues to exist and has been outstanding since 2012.

Defendant attempted to admit a memorandum purportedly written by an accountant, which Defendant proffered would support his position. Plaintiff objected to admission of the memorandum and Defendant's proposed testimony related to it as inadmissible hearsay since the author was not present at the trial. The Court sustained Plaintiff's objection. Defendant produced evidence of check stubs, a handwritten ledger of cash deposits to Nationwide, a separation agreement showing he was ordered to pay alimony and transfer thirty percent of shares in Nationwide to his ex-spouse, and a QuickBooks file showing payments made in 2011 and 2012. Defendant argued that the QuickBooks file shows he repaid the entire Loan Balance in 2011 and 2012, but the payments were not applied. The 2011 payments totaled $156,900.64, and the 2012 payments totaled $151,700. Ex. D-R, QuickBooks File Payments. Defendant, arguably, paid a total of $308,600.64, which would be $101,680.64 in excess of the Loan Balance.

Hartstein rebutted Defendant's argument about payments he made in 2011 and 2012. She testified that the Distribution Account shows the debits and credits of all payments or transfers that

6

Defendant made. Hartstein credibly explained that the payments Defendant mentioned were recorded in the Distribution Account in 2011 and 2012. Ex. P-7(B), at 2-5. In effect, Plaintiff seeks the "net amount" of the shareholder loan after applying Defendant's payments.

C.    Transfers

Hartstein prepared and produced a summary report, which was grouped into three categories: (1) Payments to Defendant, $127,255; (2) Payments for the benefit of Defendant, $42,690.10; and (3) Credit Card Payments, $1,847.50, for a total amount of $171,792.60. Ex. P-7(A), Hartstein Accounting Report, pp. 2-3. Hartstein obtained the information in support of her report from the Distribution Account.

The first category is essentially bonus payments made to Defendant through wire transfers or checks. The second category is payments made to the IRS, Santander, and for boat insurance. The third category is credit card payments to Capital One, Discover, and BOA. Because Distribution Accounts are usually used to record personal transactions, as discussed above, Hartstein determined that the payments were made to or on behalf of Defendant. Defendant made conclusory statements that the credit card payments were made on behalf of Nationwide, and that payments to Santander were for an ambulance loan. He did not provide any further testimony or documentary evidence to support his conclusory statements, and he was otherwise not credible.

Defendant further argued that the amounts received were payroll allowed under the cash Collateral Order. But Hartstein explained that she examined the Budget and the cost of labor category in Nationwide's statement of operations. She determined that the total amount expended on payroll far exceeded the total amount allowed under the Budget. She testified that Defendant did not receive any salary from payroll from the Petition Date to the date the case converted, and that payroll did not include bonus payments. In other words, the labor costs expended went to

7

Nationwide's employees – not Defendant, and payroll did not include any distributions to Defendant.

Hartstein credibly testified about her review of Nationwide's books and records and her summary report on payments made to or on behalf of Defendant.

### D. Defendant's Testimony

In addition to the limited testimony of Defendant discussed above, Defendant testified about topics that were immaterial to this litigation. He expressed dissatisfaction about Plaintiff's management of the estate – particularly, Plaintiff's decision not to pursue the Medicare appeals. Defendant also complained about different amounts Plaintiff sought in two demand letters sent to him in May 2016 and July 2016. Ex. D-A; Ex. D-B. Finally, he argued that the Cash Collateral Order and the Consent Order allowed him to receive a salary.

Plaintiff credibly testified that the letters sought recovery based upon different potential causes of action, and that the U.S. Trustee Guidelines require her to send demand letters prior to filing a complaint. As to management of the estate, Plaintiff said she conferred with her counsel about the viability of the Medicare appeals. Based upon those discussions, she concluded that there was no value to the estate in pursuing the appeals; she stated that she exercised her business judgment in deciding not to continue with the appeals.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding under 28 U.S.C. § 157(b)(2) (E) and (H).

## DISCUSSION

### A.    Count I: Section 542(b)

Section 542(b) of the Bankruptcy Code requires "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order" to pay such debt to the trustee. 11 U.S.C. § 542(b). Plaintiff bears the burden of establishing a claim under section 542(b). See In re Irwin, 509 B.R. 808, 816 (Bankr. E.D. Pa. 2014). An entity refers to a person, 11 U.S.C. § 101(15), and "a loan is deemed payable on demand where . . . there is no time stated between the debtor and creditor as to when repayment is due." Rosenberg v. Smith, 2014 WL 563667, at *3 (N.J. App. Div. 2014). Section 541, in turn, provides that property of the estate includes "all legal or equitable interests of the debtor as of the commencement of the case." 11 U.S.C. § 541(a)(1).

Plaintiff seeks to recover the Loan Balance because it is a debt owed by Defendant to Nationwide, and it is property of the estate. As discussed above, Plaintiff and Hartstein credibly testified that the Loan Balance has been outstanding since 2012 and the Loan Balance is listed as an asset in Nationwide's balance sheet. The balance sheet as of December 2014 shows a shareholder loan in the amount of $206,920. The Loan Balance was listed as a current asset on the balance sheet and became property of the estate on the Petition Date; it is a matured debt that is presently owed by Defendant and is payable on demand to Plaintiff. Moreover, this appears to be the lowest Loan Balance since prior to the Petition Date.

Defendant testified that he repaid the Loan Balance in 2011 and 2012. Relying on a QuickBooks file, which shows payments in 2011 and 2012 in the amounts of $156,900.64 and $151,700, respectively. Defendant argues that he repaid the Loan Balance in excess of the amount demanded by Plaintiff. The weight of credible evidence, however, shows that he did not repay the entire Loan Balance.

9

Hartstein testified that all the payments Defendant allegedly made were recorded in the QuickBooks file. The MORs from January 2013 to December 2014, supra, show the balance of the shareholder loan declining. Nationwide's 2014 Tax Return also shows that a shareholder loan was outstanding at the beginning and end of 2014. The evidence adduced originated from Nationwide's MORs and were based on Nationwide's books and records. The MORs were signed by Defendant and filed in Nationwide's bankruptcy case. In short, Defendant owes a debt to Nationwide, as reflected in the December 2014 balance sheet. The debt is property of the estate, and it is a matured debt because the shareholder loan was not subject to any conditions for repayment.

For these reasons, Plaintiff has met her burden under section 542(b) to recover the Loan Balance. Judgment will be entered in favor of Plaintiff on Count I in the amount of $206,920.

B. Count II: Fraudulent Transfer

The Complaint alleged two theories of liability for fraudulent transfer under the NJUFTA, but Plaintiff focused only on constructive fraudulent transfer at trial. Plaintiff effectively waived her claims of intentional fraudulent transfers. See In re Main, Inc., 239 B.R. 281, 296 (Bankr. E.D. Pa. 1999) (citing In re Laramie Associates, Ltd., 1997 WL 67848, at *12 (Bankr. E.D. Pa. 1997) (a claim contained in the pleading but not pursued at trial is deemed abandoned)). Moreover, she chose not to pursue the entire amount stated in the Complaint. Plaintiff initially sought to avoid and recover fraudulent transfers made between January 1, 2011 and May 5, 2015 in the amount of $169,649.17. See Complaint ¶ 22(b). Yet she specified at trial that she only seeks to avoid and recover transfers made by Nationwide from January 31, 2013 to August 14, 2014, for a total of $165,761.89 – the final balance shown before the Consent Order was entered (the "Transfer Period"). Tr. Hrg. 2:14:55 - 2:15:02, (May 29, 2018).

Because the Transfer Period was after the Petition Date, the Court asked the parties to brief whether Plaintiff can avoid them under section 544(b). After reviewing Plaintiff's brief and applicable case law, the Court concludes that avoiding post-petition transfers is allowed only under section 549(a), not section 544(b). See, e.g., In re Troutman Enterprises, Inc., 2007 WL 205640, at *9-10 (B.A.P. 6th Cir. 2007); In re Centennial Textiles, Inc., 227 B.R. 606, 610 (Bankr. S.D.N.Y. 1998) ("Section 544(b) . . . applies solely to pre-petition transfers.") (citing In re Metropolitan Cosmetic Reconstructive Surgery P.A., 125 B.R. 556, 557 (Bankr. D. Minn. 1991); In re Sattler's, Inc., 73 B.R. 780, 790–91 (Bankr. S.D.N.Y. 1987)); In re 31–33 Corp., 100 B.R. 744, 747–48 (Bankr. E.D. Pa. 1989) (Section 549 "is the exclusive means by which a trustee may attack post-petition transfers."). While Plaintiff concedes that the transfers during the Transfer Period may only be avoided under section 549(a), she argues that, under Rule 15(b)(2) and (c)(1)(B), made applicable by the Federal Rules of Bankruptcy Procedure 7015, she should be allowed to: (1) conform the pleadings to the evidence; or (2) amend the Complaint to add a new claim under section 549.

### 1.    *Conform Pleadings to the Evidence*

Rule 15(b)(2), allows an amendment of pleadings to conform to the evidence at any time if the parties at trial expressly or impliedly consent to an unpleaded issue. Fed. R. Civ. P. 15(b)(2). The rule is liberally applied to allow an amendment "when the presentation of the merits of the action will be subserved and the opposing party will not thereby be prejudiced." Evans Prods. Co. v. West Am. Ins. Co., 736 F.2d 920, 924 (3d Cir. 1984). Express consent is an agreement between the parties to include an unpleaded issue. See Foraker v. Chaffinch, 501 F.3d 231, 244 (3d Cir. 2007); see also Douglas v. Owens, 50 F.3d 1226, 1236 (3d Cir. 1995) ("If the issue . . . has not been tried with the consent of the parties, then an amendment to conform to the pleadings will not be permitted no matter when made.") (citation omitted) (emphasis omitted).

11

Implied consent, on the other hand, considers: (1) "whether the parties recognized that the unpleaded issue entered the case at trial," (2) "whether the evidence that supports the unpleaded issue was introduced at trial without objection," and (3) "whether a finding of trial by consent prejudiced the opposing party's opportunity to respond." Foraker v. Chaffinch, 501 F.3d at 244 (citations omitted). Of these factors, "prejudice to the non-moving party is the touchstone for the denial of an amendment." Cornell & Co. v. Occupational Safety and Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978). "The principal test for prejudice . . . is whether the opposing party was denied a fair opportunity to defend and to offer additional evidence on that different theory." Foraker v. Chaffinch, 501 F.3d at 244. Further, courts have discretion to allow an amendment to conform the pleadings to the evidence, unless an amendment would be futile. In re Basher, 2002 WL 31856712, at *3 (Bankr. E.D. Pa. 2002) (declining to exercise discretion where amendment would have been futile) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)) (footnote omitted).

In this case it would be a futile to allow an amendment to conform the Complaint to the evidence. While section 549(a) allows avoidance of post-petition transfers made by the Debtor to a transferee without court approval, 11 U.S.C. § 549(a)(1) and (2)(B), such an action must be commenced within two years after the date of the transfer or before the bankruptcy case is closed, whichever is earlier. 11 U.S.C. § 549(d). The Transfer Period in this case was January 31, 2013 to August 14, 2014; Plaintiff did not file the Complaint until December 27, 2016 - more than two years after the Transfer Period ended. For this reason, Plaintiff's request to conform the Complaint to the evidence must be denied.

Even if it would not be futile to allow the amendment, Defendant did not consent to conform the Complaint to evidence related to the post-petition transfers nor did Defendant impliedly consent. The unpled issue is avoidance of post-petition transfers. Plaintiff failed to satisfy the factors discussed in Foraker. The first factor looks at whether the parties recognized the

12

unpleaded issue during the trial. Neither party recognized the issue of post-petition transfers. Plaintiff brought a claim pursuant to section 544(b). She advocated for relief under section 544(b) in her opening and closing statements, offered voluminous evidence to establish constructive fraudulent transfers; not voidable post-petition transfers.

Plaintiff did not seek leave to amend the Complaint to the evidence during the trial. But see Bernbeck v. Greco, 69 Fed. Appx. 98, 102 (3d Cir. 2003) (parties recognized unpleaded issue entered the case because plaintiff verbally moved to amend the complaint to conform to the evidence during the trial); McCauley v. Univ. of the Virgin Islands, 2009 WL 2601637, at *4 (D.V.I. 2009). Also, considering the specialized nature of bankruptcy law, it is understandable for a self-represented litigant, like Defendant, to lack awareness of the distinction and effect of pre and post-petition transactions and make effective arguments or raise defenses provided under the Bankruptcy Code. See, e.g., In re Detweiler, 2017 WL 650062, at *10 (Bankr. N.D. Ohio 2017) ("It is not enough for a party to have introduced evidence relevant to an unpleaded issue. . . . 'Instead, [i]t must appear that the parties understood the evidence to be aimed at the unpleaded issue.'") (quoting Kehoe Component Sales Inc. v. Best Lighting Products, Inc., 796 F.3d 576, 595 (6th Cir. 2015)) (citation omitted). For these reasons, the first factor does not weigh in favor of finding implied consent.

The second factor looks at whether the evidence that supports the unpleaded issue was introduced at trial without objection. In other words, "there is implied consent to litigate an issue if there is no objection to the introduction of evidence on the unpleaded issue, <u>as long as the non-objecting party was fairly apprised that the evidence went to the unpleaded issue</u>." Schultz v. Cally, 528 F.2d 470, 474 (3d Cir. 1975) (quoting Niedland v. United States, 338 F.2d 254, 258 (3d Cir. 1964)) (emphasis in original).

13

Plaintiff introduced evidence to support the unpleaded issue without any objection. To prevail under on a claim under section 549(a), a party must show that: (1) the transfers were property of the estate; (2) the transfers occurred after the commencement of the case; (2) the transfers were not authorized by the court. 11 U.S.C. § 549(a)(1)-(2)(B). All the transfers occurred after the Petition Date. The transfers were also property of the estate and were not authorized by the Court. Hartstein testified that the unauthorized post-petition transfers included bonus payments to Defendant, payments to credit card entities, the IRS, Santander, and for boat insurance. Defendant did not offer any credible contrary evidence; rather, he stated that the Cash Collateral Order and the Consent Order allowed him to receive a salary. He also said that he used the credit cards for the benefit of Nationwide, as well as the payments to Santander. In response, Hartstein explained that salaries were paid to Nationwide employees, and that Nationwide's books and records showed that Defendant did not receive any salary during the Transfer Period. She also explained that the bonus payments to Defendant and payments to the IRS, credit card entities, Santander, and for boat insurance were all recorded in the Distribution Account. However, the Cash Collateral Order and the Consent Order did not allow any of these payments. The weight of the evidence shows that Nationwide made unauthorized post-petition transfers during the Transfer Period.

But Defendant was not "fairly" apprised that the evidence went to the unpleaded issue. As discussed above, a self-represented party often lacks awareness or understanding of the significance of whether the transfers were made pre or postpetition. In addition, at trial Plaintiff only mentioned avoiding the transfers pursuant section 544(b). She did not seek leave to amend the Complaint until she filed the Post-Trial Brief. Because Defendant was not "fairly" apprised of the issue of post-petition transfers at trial and did not have a fair chance to oppose the issue, the second factor does not weigh in favor of finding implied consent.

The final factor looks at whether Defendant would be prejudiced. Defendant would be prejudiced by an amendment to the Complaint to conform to the evidence because he had a viable affirmative defense under section 549(d). The Court cannot believe that he would have consented to waive a complete limitations defense if he had been apprised of it or known that Plaintiff would seek to amend the Complaint to include a claim under section 549. It would be a waste of judicial time and resources to reopen the trial and require the parties to appear before the Court to determine whether Defendant consents to amend the Complaint under these circumstances. For these reasons, the third factor does not weigh in favor of finding implied consent.

Because all the factors weigh against allowing Plaintiff to conform the pleadings to the evidence, the Court must deny Plaintiff's request to do so.

### 2. *Relation Back: Add New Claim*

Alternatively, Plaintiff requests to amend the Complaint to add a claim under section 549(a) and have it relate back to the date the Complaint was filed. However, because the proposed claim would have been time barred when the Complaint was filed, it would be futile to allow such an amendment. See Fed. R. Civ. P. 15(c)(1)(B). Rule 15(c)(1)(B), which allows an amendment to add a new claim if it arises out of the same transaction or occurrence as described in the original pleading, is designed to avoid the effect of a statute of limitation that expired <u>after</u> a complaint was filed, rather than permit addition of a claim that was time barred <u>before</u> a complaint was filed. See Palmer v. City of E. Brewton, 2010 WL 231513, at *3 (S.D. Ala. 2010) ("Rule 15(c) cannot revive a claim that was time-barred before the original complaint was filed.").

In summary, Plaintiff cannot prevail on Count II or amend the Complaint to avoid and recover post-petition transfers under section 549 and section 550; judgment shall be entered in favor of Defendant on Count II.

## CONCLUSION

For the foregoing reasons, judgment shall be entered in favor of Plaintiff on Count I of the Complaint. Plaintiff is entitled to recover $206,920 on account of the shareholder loan. Judgment shall be entered in favor of Defendant on Count II.

Dated: September 6, 2019

_____
JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE